Gary L. ROBY, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A10–399.

Supreme Court of Minnesota.

Aug. 19, 2010.

Gary L. Roby, Bayport, Minnesota, pro se.

Lori Swanson, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

## OPINION

MEYER, Justice.

Gary Roby was found guilty in 1989 of first-degree premeditated murder, first-degree felony murder, and second-degree murder for the shooting death of Marlizza McIntyre. Roby was convicted of the first-degree premeditated murder charge and sentenced to mandatory life in prison. Roby filed a direct appeal of his conviction, which we affirmed. Roby has since filed three petitions for postconviction relief. The first two were denied by the postcon-

viction court, which we affirmed on appeal. In 2009, Roby filed his third petition for postconviction relief, which the postconviction court denied. This appeal followed. The primary issue on appeal is whether the postconviction court erred when it concluded that Roby had not properly invoked any of the exceptions set forth in Minn. Stat. § 590.01, subd. 4(b) (2008).

On August 31, 1989, Roby was convicted of first-degree premeditated murder after a Ramsey County jury trial and received a life sentence. The facts of Roby's case and the procedural history are set forth in more detail in *State v. Roby* (*Roby I*), 463 N.W.2d 506, 507–09 (Minn.1990). In short, the evidence at trial showed that Marlizza McIntyre was killed by one gunshot to her head while she was being held face down on the kitchen floor of a St. Paul apartment. According to a State's witness, Roby fired the fatal shot while several of his co-conspirators—James Roby, John Roby, and Lillian Dunn Simmons—held onto McIntyre's limbs and prevented her from standing up. The State's witness further testified that Roby then removed a necklace from around McIntyre's neck and some cash from inside her bra. A second witness, C.T., testified that Roby gave him the gun after the murder. A third witness, L.Y., testified that a week before the murder, Dunn Simmons asked for bullets for a revolver, said someone had been bothering her and "it had to be done." L.Y. also testified that no one discussed the murder after it happened. L.Y. further testified that about 5 minutes after the gunshots she observed Roby, James Roby, John Roby, Katie Bell, and Dunn Simmons standing near the body in the kitchen. Neither Roby nor Dunn Simmons testified at trial.

Roby's defense was that Dunn Simmons shot McIntyre and determined by herself to rob and kill the victim. A.J. and S.L.

both testified that Dunn Simmons, not Roby, fired the fatal shot, which was consistent with Roby's defense.

Roby filed a direct appeal in 1990 through a state public defender accompanied by a pro se brief, and also filed two postconviction petitions, one in 1994 and the other in 1995. We affirmed both the conviction and the denial of Roby's first two postconviction petitions in *Roby I*, 463 N.W.2d at 510, *Roby v. State (Roby II )*, 531 N.W.2d 482, 484 (Minn.1995), and *Roby v. State (Roby III )*, 547 N.W.2d 354, 357 (Minn.1996), respectively.

On March 27, 2009, Roby filed his third petition for postconviction relief. Roby alleged the following newly discovered evidence: a 2002 letter from Dunn Simmons admitting she was the shooter; a 2003 affidavit from Dunn Simmons' brother stating he believes Dunn Simmons was the shooter; a police report from 1989 detailing Dunn Simmons' status as a police informant against her boyfriend, who was also dating the victim; a 2007 affidavit from Tiesha Bell claiming L.Y. recanted part of her testimony to Bell; and a 2008 affidavit from Charlene Hodges stating that C.T. recanted part of his testimony to her. Further, Roby petitioned that his claims be considered in the "interest of justice." The State responded with a motion to dismiss on the grounds that Roby's claims were procedurally barred by Minn. Stat. § 590.01, subd. 4(c) (2008), failed on the merits, and did not entitle him to an evidentiary hearing.

The postconviction court issued an order[1] on December 30, 2009, dismissing Roby's petition as untimely because Roby failed to "invoke any of the listed exceptions to the time limit as required by the [postconviction] statute." The postconvic-

tion court did not address whether Roby's claims would have qualified for any of the exceptions to the two-year time limit on filing postconviction petitions, nor did it address any of Roby's claims on the merits. Roby appealed from that order.

Roby argues on appeal that the postconviction court erred in concluding that he failed to invoke any of the exceptions to the general time limit on filing for postconviction relief. Roby further argues that his claims qualify for an exception to the general time limit and should be considered by the court on the merits. The State argues that the postconviction court correctly concluded that Roby failed to invoke any of the exceptions and therefore the postconviction court properly declined to consider Roby's claims. The State further contends that Roby's claims, even if they meet an exception, are untimely because they were not filed within the time limit applicable to the exceptions. Finally, the State contends that Roby's claims are without merit and do not entitle Roby to an evidentiary hearing. The issue on appeal is whether the postconviction court erred when it failed to address Roby's claims based on its conclusion that Roby had not invoked any of the exceptions to the general two-year time limit.

Minnesota Statutes § 590.01, subd. 4 (2008) was added by a 2005 legislative amendment to the Postconviction Remedy Act, Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 1080, 1097–98, and provides two time limitations for postconviction petitions. First, subdivision 4(a) provides the general rule that "[n]o petition for postconviction relief may be filed more than two years after the later of: (1) the entry of judgment of conviction or

---

1. The postconviction court actually issued two orders, but the first one issued on July 6, 2009, was never received by the State or Roby due to a clerical error and therefore a second order was issued on December 30, 2009.

sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." [2]  Subdivision 4(b) provides certain exceptions to the general two-year rule.  A petition for postconviction relief may be heard notwithstanding the general time limitation if:

(1) the petitioner establishes that a physical disability or mental disease precluded a timely assertion of the claim;

(2) the petitioner alleges the existence of newly discovered evidence, including scientific evidence, that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted;

(3) the petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States Supreme Court or a Minnesota appellate court and the petitioner establishes that this interpretation is retroactively applicable to the petitioner's case;

(4) the petition is brought pursuant to subdivision 3; or

(5) the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice.

Subdivision 4(c) provides a time limit for the exceptions, which is that "[a]ny petition invoking an exception provided in paragraph (b) must be filed within two years of the date the claim arises."

The postconviction court first found that because Roby was convicted prior to August 1, 2005, when subdivision 4 took effect, he was "effectively required ... to file his petition within two years of that date, which was July 31, 2007."  The court further found that Roby did not file his petition until March 27, 2009, and therefore his petition was not brought within two years.  Because Roby was convicted in 1989 and his conviction became final after a direct appeal in 1990, the postconviction court correctly determined that Roby's conviction was final before the effective date of the 2005 amendment, he was required to file his petition before July 31, 2007, and therefore the March 27, 2009, petition was filed after the general time limit had lapsed.  See Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 1080, 1097–98.

Roby's petition alleges the existence of newly discovered evidence that he claims demonstrates that he was not the shooter and that several witnesses testified falsely as to the events surrounding the murder.  Roby's petition further asks that the court review his claims "in the interest of justice."  Nevertheless, the postconviction court concluded that Roby failed to "invoke any of the listed exceptions to the time limit as required by the statute" and declined to consider the merits of the petition.  Roby argues that he did invoke an exception, particularly the interests-of-justice exception in Minn.Stat. § 590.02, subd. 4(b)(5).  The State argues that Roby's petition was insufficient to raise the statutory interests-of-justice exception because he did not "cite this provision, refer to it in any way, or note its requirement that a

---

**2.**  The legislative amendment additionally provides that subdivision 4 became effective August 1, 2005, and "[a]ny person whose conviction became final before August 1, 2005, shall have two years after the effective date of this act to file a petition for postconviction relief." Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 1080, 1098.

tardy petition be not frivolous *and* in the interests of justice."

The postconviction court relied on our decision in *Stewart v. State,* 764 N.W.2d 32, 34 (Minn.2009), in support of its conclusion that a petition "filed after the two-year deadline and which fails to *invoke* one of the five listed exceptions to the time limit is untimely and should not be considered on its merits." (Emphasis added.) In *Stewart,* we considered a denial of a petition for postconviction relief and stated that the petition "did not assert or establish any of the statute's exceptions; thus, we conclude that his petition is untimely and should not be considered on the merits." *Id.* In our view, *Stewart* never considered the question of whether a specific pleading requirement is found in the postconviction statute. The petitioner in *Stewart* simply never raised the issue. *See id.* at 33–34. Several court of appeals opinions have read *Stewart* to imply a specific pleading requirement. *See Nestell v. State,* 758 N.W.2d 610, 614 (Minn.App. 2008) (concluding that "by using the phrase 'petition invoking,' the legislature intended to require petitions expressly to identify the applicable exception"); *Edwards v. State,* No. A09–1432, 2010 WL 1753327, at *2 (Minn.App. May 4, 2010) (holding that "[t]he phrase 'petition invoking' requires petitions to expressly identify the applicable exception"), *rev. denied* (Minn. June 15, 2010); *Johnson v. State,* No. A09–478, 2009 WL 5091911, at *2 (Minn.App. Dec.29, 2009) (holding that the petitioner failed to cite the exception and "[c]aselaw interpreting the postconviction statutes requires more specific pleading"), *rev. denied* (Minn. Feb. 24, 2010); *Rodriguez v. State,* No. A08–1662, 2009 WL 2016327, at *2 (Minn.App. July 14, 2009) (holding that the language "[w]hen the interests of justice require consideration and doing so would not work an unfair surprise on a party" is not sufficient to expressly identify the interests-of-justice exception), *rev. denied* (Minn. Sept. 29, 2009).

In this case, the postconviction court applied the same reasoning that the court of appeals has adopted in the aforementioned cases and rejected Roby's claims of exceptions to the time bar because it found that Roby did not specifically plead any of the exceptions. The question then is whether a specific pleading requirement is found in the postconviction statute.

■■■ Statutory interpretation is a question of law, which we review de novo. *Munger v. State,* 749 N.W.2d 335, 338 (Minn.2008). "'A statute must be construed according to its plain language.'" *Id.* (quoting *State v. Colvin,* 645 N.W.2d 449, 452 (Minn.2002)). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2008).

The language of subdivision 4(c) indicates that exceptions to the two-year time bar under the postconviction relief statute must be invoked by the petition. Minn. Stat. § 590.01, subd. 4(c) ("Any petition *invoking* an exception ... must be filed within two years of the date the claim arises." (emphasis added)). Minnesota Statutes § 590.02, subd. 1(1) (2008), instructs that a petition for postconviction relief contain

> a statement of the facts and the grounds upon which the petition is based and the relief desired. All grounds for relief must be stated in the petition or any amendment thereof unless they could not reasonably have been set forth therein. *It shall not contain argument or citation of authorities.*

(Emphasis added.) Section 590.02, subdivision 1(1) does not require a petitioner to provide statutory citations to the excep-

tions to the general time limit. Instead, section 590.02, subdivision 1(1) expressly instructs that a petition *not* include "citation of authorities."

Further, Minn.Stat. § 590.03 (2008) in relevant part states that "[t]he court shall liberally construe the petition and any amendments thereto and shall look to the substance thereof and waive any irregularities or defects in form." We have previously applied this section to support liberally construing petitions and considering claims despite not being properly raised. *See, e.g., Leake v. State,* 737 N.W.2d 531, 540 n. 3 (Minn.2007) (noting that although the petitioner might not have properly raised his claim, he filed his petition pro se and it is "appropriate to read the pleadings of pro se appellants with an understanding eye"); *Hathaway v. State,* 741 N.W.2d 875, 877 (Minn.2007) (liberally construing a petition in accordance with section 590.03).

■ We conclude, based on the plain language of the postconviction statutes and case law interpreting the statutes, that a petition for postconviction relief does not need to include specific citation to a subdivision 4(b) exception to invoke it. Rather, the postconviction statutes require a court to look at the "statement of the facts and the grounds upon which the petition is based," Minn.Stat. § 590.02, subd. 1(1), "waiv[ing] any irregularities or defects in form" and "liberally constru[ing]" the petition to ascertain whether the petition raises an exception, Minn.Stat. § 590.03.

■ Applying these standards, we hold that Roby's petition was sufficient to invoke two of the five statutory exceptions. First, Roby's petition alleges the existence of "newly discovered" evidence that he claims demonstrates that he was not the shooter and that several witnesses testified falsely as to the events surrounding the murder. Second, Roby's petition asks that "in the interest of justice the asserted claims presented by Petitioner Roby should be reviewed by the Court." Based on these facts, Roby's petition is sufficient to invoke the newly discovered evidence and interests-of-justice exceptions. Minn. Stat. § 590.01, subd. 4(b)(2), (b)(5). Therefore, we conclude that the postconviction court erred in declining to consider Roby's petition.

Because we hold that Roby invoked two of the subdivision 4(b) exceptions, two additional issues arise. The first issue, as raised by the State, is whether Roby's claims were filed within the time limit for the exceptions under Minn.Stat. § 590.01, subd. 4(c). If the claims are not time-barred by subdivision 4(c), the second issue is whether Roby actually established the newly discovered evidence exception or the interests-of-justice exception.

The Legislature specifically provided the postconviction court with the discretion to hear a petition filed more than two years after the disposition of the direct appeal. *See* Minn.Stat. § 590.01, subd. 4(b) (noting that "a court *may* hear a petition for postconviction relief if" any of the exceptions are met (emphasis added)). Because the postconviction court erred in its interpretation of the statute, the record below was not sufficiently developed to resolve the remaining two issues and the postconviction court failed to exercise its discretion on either of those issues. On the facts of this case, it is appropriate to remand to the postconviction court.[3] *See, e.g., Wen-*

---

**3.** The present record is inadequate to determine whether Roby's claims arose within two years of Roby filing his petition as required by Minn.Stat. § 590.01, subd. 4(c). For example, the Hodges affidavit is dated in 2008, but states that Hodges informed Roby of C.T.'s recantation in March 2007. Yet nothing in the record indicates when in March 2007 she

*smann Realty, Inc. v. City of Eagan,* 734 N.W.2d 623, 627 (Minn.2007) (remanding when disputed fact issues prevented the court from deciding issue on appeal).

Reversed and remanded.

STRAS, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

informed Roby of this information. If a claim arises when a petitioner learns of it, and Roby learned of it in early March, his petition was filed too late. However, if Roby learned of this claim after March 27, 2007, his claim may not be too late. Thus, the record lacks the necessary information to determine when Roby's claims arose, and we cannot resolve Roby's claims on the subdivision 4(c) time limitation without further findings.