Kenneth Octavius WALLACE,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A11–1679.

Supreme Court of Minnesota.

Sept. 26, 2012.

Kenneth Octavius Wallace, Stillwater, MN, pro se.

Lori Swanson, Attorney General, Saint Paul, MN, Michael O. Freeman, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

STRAS, Justice.

Following a jury trial, appellant Kenneth Octavius Wallace was convicted of first-degree felony murder, attempted second-degree criminal sexual conduct, and second-degree assault. We affirmed Wallace's convictions on direct appeal in 1997. *State v. Wallace*, 558 N.W.2d 469 (Minn. 1997). More than fourteen years later, on April 20, 2011, Wallace filed his second petition for postconviction relief, which the postconviction court summarily denied. Because we conclude that Wallace's postconviction claims are time barred under Minn.Stat. § 590.01, subd. 4 (2010), we affirm.

### I.

According to the testimony presented at

Wallace's trial,[1] Wallace coaxed his neighbor R.L. into his apartment on the night in question. *See Wallace,* 558 N.W.2d at 470. Wallace then forced R.L. down onto his bed, tied R.L.'s hands behind her back with strips of a bed sheet, held a knife to R.L.'s neck, and threatened to cut her. *Id.* When R.L.'s boyfriend, Kenneth Williams, arrived at Wallace's apartment several minutes later, Wallace and Williams fought in Wallace's living room. *See id.* at 470–71. After escaping from her restraints, R.L. ran out of Wallace's apartment screaming for someone to call the police. *Id.* at 471. Shortly after the police arrived, Williams died from a stab wound located near his armpit. *Id.*

The jury found Wallace guilty of (1) first-degree felony murder, Minn.Stat. § 609.185(a)(2) (2010); (2) two counts of attempted second-degree criminal sexual conduct, Minn.Stat. § 609.343, subd. 1(c) (2010); and (3) second-degree assault, Minn.Stat. § 609.222 (2010). *See Wallace,* 558 N.W.2d at 472. The district court sentenced Wallace to (1) mandatory life imprisonment without the possibility of release for first-degree felony murder, (2) a concurrent 54–month sentence for attempted second-degree criminal sexual conduct, and (3) a concurrent 65–month sentence for second-degree assault. *Id.*

Wallace filed a direct appeal with this court challenging his convictions, arguing, among other things, that the circumstantial evidence presented at his trial was insufficient to establish intent to commit second-degree criminal sexual conduct and that his trial counsel was ineffective. *Id.* at 472–74. On January 16, 1997, we affirmed Wallace's convictions, concluding that the evidence presented at trial was

sufficient to establish intent and that his trial counsel "was not ineffective." *Id.*

In May 2002, Wallace filed his first petition for postconviction relief. In the petition, Wallace argued that his trial and appellate counsel were ineffective. He also claimed that the felony murder statute, Minn.Stat. § 609.185 (2000), was unconstitutional and that, by sentencing him under that statute, the district court denied him due process. The postconviction court summarily denied Wallace's petition. The court concluded that Wallace's ineffective-assistance-of-trial-counsel and due-process claims were procedurally barred under *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), because the claims were raised, or could have been raised, on direct appeal. The court also concluded that Wallace's ineffective-assistance-of-appellate-counsel claim failed on the merits. Although Wallace filed a notice of appeal, we later dismissed his appeal for inactivity.

On January 21, 2005, Wallace filed a motion in the district court to correct his sentence. More specifically, he argued that his sentence violated *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Wallace also moved for a new trial and appointment of counsel. The court denied both motions.

■ On April 20, 2011, Wallace filed his second petition for postconviction relief—the petition at issue in this appeal. In his petition, Wallace argued that (1) the district court erred by imposing multiple sentences, (2) the felony-murder statute is unconstitutional, (3) his trial and appellate

1. For purposes of addressing Wallace's claims for postconviction relief, only an abbreviated recitation of the facts underlying his criminal convictions is necessary. However, our opinion in Wallace's direct appeal provides a more comprehensive account of the facts underlying Wallace's crimes. *Wallace,* 558 N.W.2d at 469–72.

counsel were ineffective, and (4) application of the *Knaffla* rule to preclude review of his federal constitutional claims is unconstitutional.[2] The postconviction court denied Wallace's petition in its entirety. The court incorporated into its order the 2002 order denying Wallace's first postconviction petition and the 2005 order denying Wallace's motion to correct his sentence. The court then concluded that Wallace's petition was time barred under Minn.Stat. § 590.01, subd. 4 (2010), and that no exception to the time bar applied. *See* Minn. Stat. § 590.01, subd. 4(b). The court alternatively concluded that the *Knaffla* rule barred Wallace's claims because we had previously rejected Wallace's argument on direct appeal that his trial counsel was ineffective and the 2002 order denying postconviction relief "addressed the exact same issues as those brought in the instant Petition." Because it applied the time bar and *Knaffla*, the court did not address the merits of Wallace's claims. Wallace now appeals the postconviction court's denial of his second petition for postconviction relief.

II.

The question presented by this case is whether the postconviction court properly applied the time bar in Minn.Stat. § 590.01, subd. 4, in denying Wallace's second petition for postconviction relief. In 2005, the Legislature amended the postconviction statute, Minn.Stat. § 590.01 (2010), to add a provision requiring petitions for postconviction relief to be filed no "more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petition-

er's direct appeal." Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901, 1097 (codified at Minn.Stat. § 590.01, subd. 4(a)). For petitioners like Wallace, however, whose convictions became final before August 1, 2005, the Legislature specified that petitioners had "two years after the effective date of this act to file a petition for postconviction relief." *Id.* at 1097–98. Because the effective date of the amendment was August 1, 2005, Wallace had until August 1, 2007, to file his petition. However, Wallace did not file his second petition for postconviction relief until April 20, 2011, which means that his petition is untimely unless it satisfies one of the five exceptions to the time bar in Minn.Stat. § 590.01, subd. 4(b).

Specifically, subdivision 4(b) permits a court to hear an otherwise time-barred petition if:

(1) the petitioner establishes that a physical disability or mental disease precluded a timely assertion of the claim;

(2) the petitioner alleges the existence of newly discovered evidence, including scientific evidence, that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted;

(3) the petitioner asserts a new interpretation of federal or state constitution-

---

2. In his second petition for postconviction relief, Wallace also argued that the State failed to prove that the stabbing of Williams and the attempted sexual assault of R.L. were part of the same "continuous transaction," as

required by the felony murder rule. However, Wallace has waived our consideration of that issue by failing to address it in his briefing before this court. *See Powers v. State,* 688 N.W.2d 559, 560 n. 1 (Minn.2004).

al or statutory law by either the United States Supreme Court or a Minnesota appellate court and the petitioner establishes that this interpretation is retroactively applicable to the petitioner's case;

(4) the petition is brought pursuant to subdivision 3 [which governs petitions from persons who were convicted and sentenced for a crime committed before May 1, 1980]; or

(5) the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice.

Minn.Stat. § 590.01, subd. 4(b). Wallace's petition fails to invoke specifically any of the exceptions to the time bar set out in subdivision 4(b). However, a postconviction petition need not "include specific citation to a subdivision 4(b) exception to invoke it." *Roby v. State,* 787 N.W.2d 186, 191 (Minn.2010). Rather, a postconviction court must examine the statement of the facts and the grounds supporting the petition, " 'waive any irregularities or defects in form,' " and construe the petition liberally to determine whether the petitioner has invoked a subdivision 4(b) exception. *Id.* (quoting Minn.Stat. § 590.03 (2010)).

■ In this case, the memorandum accompanying Wallace's petition urged the postconviction court to consider the petition in the "interest[s] of justice." Liberally construing Wallace's petition and the documents accompanying it, we conclude that Wallace's reference to the "interest[s] of justice" in his memorandum sufficiently invoked the interests-of-justice exception set forth in Minn.Stat. § 590.01, subd. 4(b)(5). *See Rickert v. State,* 795 N.W.2d 236, 241 (Minn.2011) (construing liberally a postconviction petition and accompanying documents to conclude that a petitioner had adequately invoked the interests-of-justice exception).

After concluding that Wallace adequately invoked the interests-of-justice exception, the next step is to determine whether he has "establishe[d] to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). To satisfy the interests-of-justice exception, in other words, a petitioner must satisfy two requirements: (1) that the petition "is not frivolous," and (2) that the petition "is in the interests of justice." If Wallace's petition fails to meet either of those requirements, then his petition is time barred and we will not consider the merits of his claims.

Although we have extensively defined what a petitioner must show to obtain relief in the "interests of justice," we have only briefly described what it means for a postconviction petition to be "frivolous." *Gassler v. State,* 787 N.W.2d 575, 586–87 (Minn.2010). In *Gassler* we stated, without further explanation, that a petition is "frivolous" if it is "perfectly apparent, without argument, that the petition is without merit." *Id.* at 586. In *Rickert,* we explained further that a petition is not frivolous if the petitioner can show "a good-faith basis for the claim[s]" made therein, "not that [the petitioner] necessarily would succeed on the merits." 795 N.W.2d at 241.

Other courts have defined the term "frivolous" in a similar manner. For example, in *Neitzke v. Williams,* the Supreme Court of the United States addressed the meaning of the term "frivolous" for purposes of the federal *in forma pauperis* statute, 28 U.S.C. § 1915 (2006). *See Neitzke v. Williams,* 490 U.S. 319, 324–25, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Relying on the definition of legal frivolousness from *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the

Court stated that a claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke,* 490 U.S. at 325, 109 S.Ct. 1827; *see also Anders,* 386 U.S. at 744, 87 S.Ct. 1396 (stating that a claim is not frivolous if "the legal points [are] arguable on their merits"). And citing *Neitzke,* the Illinois Supreme Court recently adopted a similar definition of "frivolous" in interpreting its own postconviction act. *See People v. Hodges,* 234 Ill.2d 1, 332 Ill.Dec. 318, 912 N.E.2d 1204, 1209–12 (2009) (concluding that a petition can be summarily dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact").

The definitions in *Rickert, Neitzke,* and *Hodges* closely track the plain and ordinary meaning of the term "frivolous." *See Webster's Third New International Dictionary* 913 (2002) (defining "frivolous" as "of little weight or importance: *having no basis in law or fact*") (emphasis added). Indeed, those definitions are also consistent with the way we have defined the term "frivolous" in other contexts. *See, e.g., Bond v. Comm'r of Revenue,* 691 N.W.2d 831, 839 (Minn.2005) (holding that the taxpayer filed a "frivolous return" because it "ha[d] no basis in law or fact"). Accordingly, we conclude that a petition is "frivolous" under Minn.Stat. § 590.01, subd. 4(b)(5) if it is perfectly apparent, without argument, that the claims in the petition lack an objective, good-faith basis in law or fact.[3] *Compare Neitzke,* 490 U.S. at 325, 109 S.Ct. 1827, *with Rickert,* 795 N.W.2d at 241; *see also*

*Bond,* 691 N.W.2d at 839 (determining "frivolousness" under an objective standard).

A claim lacks an objective, good-faith basis in law if it rests upon "an indisputably meritless legal theory." *Neitzke,* 490 U.S. at 327, 109 S.Ct. 1827. For example, a claim that is contrary to directly controlling legal authority—made without a good-faith argument for an extension, modification, or reversal of existing law—qualifies as "indisputably meritless." *See Rabideau v. City of Racine,* 243 Wis.2d 486, 627 N.W.2d 795, 805 (2001) (noting that an action is frivolous when it cannot "be supported by a good faith argument for an extension, modification or reversal of existing law"); *cf.* Minn. R. Prof. Conduct 3.1 (describing a claim as not frivolous if it is based on "a good faith argument for an extension, modification, or reversal of existing law"). Similarly, a claim is "indisputably meritless" when it clearly is procedurally barred, it asserts the infringement of a legal interest that plainly does not exist, or the record completely contradicts it. *See Neitzke,* 490 U.S. at 327, 109 S.Ct. 1827; *Hodges,* 332 Ill.Dec. 318, 912 N.E.2d at 1212; *see also People v. Alcozer,* 241 Ill.2d 248, 350 Ill. Dec. 1, 948 N.E.2d 70, 77 (2011) (holding that "procedural defects" can result in a conclusion that a postconviction petition is frivolous). A claim lacks an objective, good-faith basis in fact, on the other hand, if the factual contentions are "clearly baseless." *Neitzke,* 490 U.S. at 327, 109 S.Ct. 1827. Clearly baseless factual allegations include those that are "fanciful" or de-

---

**3.** The applicability of the interests-of-justice exception in Minn.Stat. § 590.01, subd. 4(b)(5), depends upon whether "the *petition* is not frivolous and is in the interests of justice." (emphasis added). Under the plain language of subdivision 4(b)(5), therefore, a postconviction court must consider the whole petition in assessing whether a petitioner has satisfied

the interests-of-justice exception, not just whether some of the individual claims in the petition are frivolous or fail to satisfy the interests-of-justice requirement. In this case, Wallace's petition is frivolous because it is perfectly apparent, without argument, that every claim in his petition lacks an objective, good-faith basis in law. *See infra* Part II.A–D.

scribe "fantastic or delusional scenarios." *Id.* at 325, 328, 109 S.Ct. 1827.

With the foregoing principles in mind, we review the four claims raised by Wallace in his second postconviction petition to determine whether they are frivolous and, if not, whether we should review them in the interests of justice.

### A.

Wallace's first claim for postconviction relief alleges that the district court denied him due process when it sentenced him for both felony murder and attempted second-degree criminal sexual conduct. More specifically, he argues that sentencing him for both crimes resulted in two sentences arising from the "same criminal act on the same person." We disagree, and conclude that Wallace's claim is frivolous.

A court may impose "multiple sentences for multiple crimes arising out of a single behavioral incident if: (1) the crimes affect multiple victims; and (2) multiple sentences do not unfairly exaggerate the criminality of the defendant's conduct." *State v. Skipintheday,* 717 N.W.2d 423, 426 (Minn.2006) (citations omitted). Both requirements are met here. The district court convicted and sentenced Wallace for two distinct crimes committed upon two distinct victims: once for attempting to rape R.L. and once for stabbing and killing Kenneth Williams. And Wallace does not argue, nor have we found any legal basis to conclude, that the multiple sentences imposed by the district court in this case unfairly exaggerate the criminality of his conduct. *See, e.g., State v. Marquardt,* 294 N.W.2d 849, 850–51 (Minn.1980) (holding that the district court did not err by sentencing a defendant to consecutive prison terms for second-degree manslaughter and aggravated assault committed against two separate victims because the multiple sentences did not unfairly exaggerate the criminality of the defendant's conduct). In fact, we squarely rejected the precise claim advanced by Wallace here in an appeal involving Wallace's convictions of attempted first-degree murder and criminal sexual conduct in an unrelated case. *State v. Wallace,* 327 N.W.2d 85, 87 (Minn.1982) (concluding that multiple sentences were permissible under the multiple-victims exception for Wallace's convictions of attempted first-degree murder and criminal sexual conduct).

Because Wallace's first claim is "indisputably meritless," we conclude that it is frivolous. *Neitzke,* 490 U.S. at 327, 109 S.Ct. 1827.

### B.

Wallace's second claim for postconviction relief alleges that the felony murder statute, Minn.Stat. § 609.185(a)(2), violates the Minnesota Constitution because it "embrace[s] more than one subject," Minn. Const. art. IV, § 17, by defining "Murder in the First Degree" but referencing criminal sexual conduct as a predicate offense in the statute. *See* Minn. Const. art. IV, § 17 ("No law shall embrace more than one subject, which shall be expressed in its title."). We conclude that Wallace's second claim is frivolous.

In determining whether a law violates Article IV, Section 17 of the Minnesota Constitution (the "Single Subject and Title Clause"), we look to the title and subject of the legislation passed by the Legislature. *See Townsend v. State,* 767 N.W.2d 11, 13 (Minn.2009) (examining the act implementing amendments to the postconviction statutes in determining whether the legislation violated the Single Subject and Title Clause); *Associated Builders & Contractors v. Ventura,* 610 N.W.2d 293, 299 (Minn.2000) (evaluating

the Omnibus Tax Act in determining whether the Legislature violated the Single Subject and Title Clause). "The function of the title requirement is to provide notice of the interests likely to be affected by the law and 'to prevent surprise and fraud upon the people and the legislature by including provisions in a bill whose title gives no intimation of the nature of the proposed legislation.'" *Wass v. Anderson,* 312 Minn. 394, 398, 252 N.W.2d 131, 134–35 (1977) (quoting *Johnson v. Harrison,* 47 Minn. 575, 577, 50 N.W. 923, 924 (1891)). The title of the law at issue here—which amended the 1974 version of Minn.Stat. § 609.185 to include various degrees of criminal sexual conduct as a predicate offense for felony murder—stated: "An act relating to crimes; specifying the acts constituting sexual offenses; admissibility of evidence in sex offense prosecutions; providing penalties; amending ... Section 609.185...." Act of June 5, 1975, ch. 374, 1975 Minn. Laws 1243, 1243. To the extent Wallace challenges the title of the 1975 legislation, his argument clearly fails because the legislation amended section 609.185 and related to crimes and the acts constituting sexual offenses, all of which were listed in the legislation's title. Thus, there is no risk that the legislation's title failed to provide "notice of the interests likely to be affected by the law." *Wass,* 312 Minn. at 398, 252 N.W.2d at 134.

To the extent Wallace challenges whether the legislation amending the felony murder statute unconstitutionally encompasses more than one subject, his claim also clearly fails. "'The term 'subject' ... is to be given a broad and extended meaning,'" requiring only that "'all matters ... should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject.'" *Associated Builders,* 610 N.W.2d at 299–300 (quoting *John-*

*son,* 47 Minn. at 577, 50 N.W. at 924). The legislation at issue here is limited to amending the felony murder statute to add certain sex crimes as a predicate offense, creating offense levels for criminal sexual conduct, and promulgating related evidentiary rules. The subject of the act here is far narrower and less "wide ranging" than the act amending the postconviction statute that we *upheld* against a Single Subject and Title Clause challenge in *Townsend. See Townsend,* 767 N.W.2d at 13–14 (concluding that a 2005 amendment to the postconviction statute did not violate the Single Subject and Title Clause despite it being "a wide-ranging bill"). Indeed, while the legislation at issue in this case involves only two related offense types (felony murder and criminal sexual conduct), the legislation in *Townsend* was divided into 18 separate articles and involved at least six topics within the general subject matter of the legislation. *Compare* Act of June 5, 1975, ch. 374, 1975 Minn. Laws 1243, 1244–51 (amending the felony murder statute, Minn.Stat. § 609.185, to incorporate first- and second-degree criminal sexual conduct; creating offense levels for criminal sexual conduct, codified at Minn.Stat. §§ 609.342 to .345; defining related terminology; and promulgating evidentiary rules for criminal-sexual-conduct cases), *with* Act of June 2, 2005, ch. 136, 2005 Minn. Laws 901, 901 (relating broadly to, among other things, public safety, monetary appropriations, various public services, criminal and civil penalties, fines and fees, and sex-offender and methamphetamine policies). The legislation at issue here, therefore, is not nearly as wide-ranging as the legislation that we have struck down—and far narrower than the legislation we have upheld—under the Single Subject and Title Clause.

Nor does Wallace argue, much less show, that the legislation at issue here in

any way implicates the concern underlying the Single Subject and Title Clause: to prevent "log-rolling," which is "the practice of combining various unpopular laws and including them in an unrelated, but more popular, law." *Townsend*, 767 N.W.2d at 13; *see also Wass*, 312 Minn. at 397, 252 N.W.2d at 134 (cautioning "that a statute should be invalidated by authority of art. 4, § 17, only if the challenged statute embodies the mischief sought to be prevented by that provision"). Thus, the various sections of the legislation at issue here satisfy the Single Subject and Title Clause because they clearly fall under "one general idea." *Associated Builders*, 610 N.W.2d at 300 (quoting *Johnson*, 47 Minn. at 577, 50 N.W. at 924).

Accordingly, we conclude that Wallace's second claim is frivolous because it rests on an "indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827.

### C.

■ Wallace's third claim for postconviction relief alleges that his trial and appellate counsel were so ineffective that "compliance with the [S]ixth [A]mendment right to counsel [was] impracticable." In Wallace's direct appeal, we concluded that Wallace's trial counsel "was not ineffective." *Wallace*, 558 N.W.2d at 473–74. Approximately five years later, a postconviction court rejected Wallace's claim that his appellate counsel was ineffective, a determination that Wallace did not appeal.

In his second postconviction petition, Wallace obliquely argues that his trial counsel never objected to some unidentified set of errors and that appellate counsel failed to advance "on appeal any arguments regarding such errors." But Wallace fails to provide *any* facts underlying his claim of ineffective assistance of trial and appellate counsel. Moreover, Wallace does not specify how the claim in his second postconviction petition differs from the parallel claims he made on direct appeal and in his first postconviction petition.

Accordingly, because Wallace fails to offer any basis—good faith or otherwise—for his claim of ineffective assistance of trial and appellate counsel, we conclude that Wallace's third claim is frivolous.

### D.

■ Wallace's fourth claim for postconviction relief alleges that the postconviction court's application of the time bar of Minn.Stat. § 590.01, subd. 4, to deny his petition violates his constitutional rights. Wallace's argument that the two-year time bar is unconstitutional is directly contrary to our recent decision in *Carlton v. State*, 816 N.W.2d 590, 615–16 (Minn.2012), in which we held that the time bar does not violate a petitioner's due-process rights.[4]

Accordingly, Wallace's fourth claim is frivolous because it is directly contrary to controlling legal authority.

---

**4.** Wallace also challenges the constitutionality of the rule from *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), but the postconviction court denied Wallace's petition on multiple grounds. Indeed, the court denied Wallace's petition on the independent basis of untimeliness, and it is on that basis that we affirm the court's decision. Consequently, we need not, and do not, address Wallace's claim challenging the constitution-

ality of *Knaffla*. *See Colbert v. State*, 811 N.W.2d 103, 106 n. 3 (Minn.2012) (declining to reach the issue of whether petitioner's claims were barred by *Knaffla* because the petition was time barred under Minn.Stat. § 590.01, subd. 4(c)); *Townsend*, 767 N.W.2d at 14 (declining to address whether *Knaffla* was incorrectly decided because the denial of postconviction relief was based on Minn.Stat. § 590.01, subd. 1).

### III.

For the foregoing reasons, we conclude that Wallace's petition for postconviction relief fails to satisfy the interests-of-justice exception in Minn.Stat. § 590.01, subd. 4(b)(5), because each of the claims in the petition is frivolous.[5] We therefore affirm the postconviction court's decision to deny Wallace's petition because it was untimely filed under Minn.Stat. § 590.01, subd. 4.

Affirmed.

---

5. In addition to the four claims presented in Wallace's petition for postconviction relief, Wallace argues on appeal that the postconviction court abused its discretion when it declined to rule on his application to proceed *in forma pauperis*. However, Minn.Stat. § 590.02, subd. 2 (2010), expressly provides that the filing of a postconviction petition "shall be without costs or any fees charged to the petitioner." Thus, because a decision on Wallace's application to proceed *in forma pauperis* was unnecessary, we need not address that claim here.