**Susan Rae BERKOVITZ, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A12–0908.**

Supreme Court of Minnesota.

Feb. 13, 2013.

Susan Rae Berkovitz, Shakopee, MN, pro se.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

STRAS, Justice.

Appellant Susan Rae Berkovitz appeals the postconviction court's denial of her second petition for postconviction relief. Because we conclude that Berkovitz filed her petition after the expiration of the two-year limitations period in Minn.Stat. § 590.01, subd. 4(a) (2012), and no exception to the limitations period applies, we affirm.

## I.

Our opinion in Berkovitz's direct appeal more fully discusses the facts underlying her convictions. *See State v. Berkovitz,* 705 N.W.2d 399 (Minn.2005). We therefore briefly recite only the facts that are relevant to Berkovitz's claims for postconviction relief.

Berkovitz shot and killed Shelley Joseph–Kordell and severely wounded Richard Hendrickson at the Hennepin County Government Center ("Government Center") on the morning of September 29, 2003. The evidence presented at trial established that Berkovitz had engaged in a long and acrimonious dispute with several members of her extended family over her father's estate. *Id.* at 400–02. Joseph–Kordell was Berkovitz's cousin and the former conservator of the estate. *Id.* at 401. Hendrickson, an attorney, represented Joseph–Kordell in the conservatorship proceedings. *Id.* Berkovitz blamed Joseph–Kordell and Hendrickson for the unfavorable outcome of the conservatorship proceedings. *Id.* She filed numerous legal complaints against both of them, including a harassment petition that was the subject of a court hearing scheduled at the Government Center on the morning of the shootings. *Id.* at 402.

Shortly after Joseph–Kordell and Hendrickson arrived at the Government Center for the hearing, Berkovitz shot Hendrickson once in the neck in the hallway outside the courtroom, and then proceeded to the women's restroom where she shot Joseph–Kordell four times. *Id.* Hendrickson survived the shooting, but the wound to his neck resulted in partial paralysis of his vocal chords. *Id.* Joseph–Kordell died at a hospital later that night. *Id.*

A jury found Berkovitz guilty of the first-degree premeditated murder of Joseph–Kordell and the attempted first-degree murder of Hendrickson. *Id.* at 404. After the trial concluded, Berkovitz wrote a letter to the district court in which she requested a new trial based on an allegation that her trial counsel had refused to let her testify. *Id.* Following an evidentiary hearing, the court denied Berkovitz's request, ruling that her trial counsel had not deprived her of the right to testify. *Id.* The court subsequently convicted Berkovitz of both offenses and imposed consecutive sentences of life in prison without the possibility of release on the first-degree premeditated murder count and 184 months in prison on the attempted first-degree murder count. *Id.*

On direct appeal, Berkovitz renewed her claim that trial counsel had deprived her of the constitutional right to testify at trial. *Id.* We rejected Berkovitz's claim, concluding that she knowingly and voluntarily waived her right to testify. *Id.* at 407–08. In her pro se supplemental brief, Berkovitz argued, among other things, that she received ineffective assistance of trial counsel. *Id.* at 408. We concluded that Berkovitz's ineffective-assistance-of-counsel claim lacked merit because she "failed to present any evidence supporting her claim" and "her counsel's performance did not fall below an objective standard of reasonableness." *Id.* at 408–09.

After we affirmed Berkovitz's convictions on November 3, 2005, she filed a petition for a writ of habeas corpus in federal district court. In her petition, Berkovitz claimed that numerous errors occurred during her trial. The federal district court denied her habeas petition, the Eighth Circuit affirmed, and the Supreme Court of the United States denied Berkovitz's petition for a writ of certiorari. *See Berkowitz v. Minnesota,*[1] Civil No. 06–

---

1. The federal district court incorrectly identified the appellant as "Berkowitz."

934 PAM/AJB, 2006 WL 2264726, at *15 (D.Minn. Aug. 7, 2006), *aff'd,* 505 F.3d 827, 828 (8th Cir.2007), *cert. denied,* 552 U.S. 1235, 128 S.Ct. 1454, 170 L.Ed.2d 283 (2008).

Berkovitz subsequently filed her first petition for postconviction relief, which the postconviction court denied without an evidentiary hearing. On February 15, 2012, Berkovitz filed her second petition for postconviction relief—the petition at issue in this appeal. In the petition, Berkovitz argued: (1) the district judge who presided over her trial was biased against her; (2) her trial counsel was ineffective; and (3) one of the two public defenders who represented her at trial had a conflict of interest. The postconviction court denied Berkovitz's petition, concluding that Berkovitz filed the petition after the expiration of the two-year limitations period in Minn. Stat. § 590.01, subd. 4(a)(2).

## II.

■ The question presented by this case is whether the postconviction court abused its discretion when it denied Berkovitz's second petition for postconviction relief under Minn.Stat. 590.01, subd. 4(a)(2), which provides that "[n]o petition for postconviction relief may be filed more than two years after ... an appellate court's disposition of petitioner's direct appeal." When an appellant does not file a petition for certiorari with the Supreme Court of the United States following our decision on direct appeal, the appellant's conviction becomes "final" 90 days after our decision for purposes of Minn.Stat.

§ 590.01, subd. 4(a)(2). *See Hannon v. State,* 781 N.W.2d 887, 891 (Minn.2010) (stating that, for purposes of Minn.Stat. § 590.01, subd. 4(a)(2), a conviction becomes "final" 90 days after we issue our decision); *Moua v. State,* 778 N.W.2d 286, 288 (Minn.2010) (noting that a conviction is final under Minn.Stat. § 590.01, subd. 4(a)(2) when the time for filing a petition for certiorari has elapsed). Following our disposition of Berkovitz's direct appeal on November 3, 2005, Berkovitz did not file a petition for certiorari with the Supreme Court. Therefore, Berkovitz's conviction became final for purposes of the two-year limitations period on February 1, 2006—90 days after we decided her direct appeal. Berkovitz then had 2 years, or until February 1, 2008, to file a postconviction petition. She did not file her second petition for postconviction relief, however, until February 15, 2012—long after the limitations period had expired.

We nonetheless will consider a petition for postconviction relief filed after the limitations period has expired if the petition satisfies one of the five exceptions in Minn. Stat. § 590.01, subd. 4(b) (2012).[2] In this case, Berkovitz's petition specifically invokes the "newly discovered evidence" and "interests of justice" exceptions to the two-year limitations period. *See Rickert v. State,* 795 N.W.2d 236, 241 (Minn.2011) (requiring a petition for postconviction relief to raise an exception to the limitations period). If Berkovitz's petition satisfies either exception, then we will review the claims in the petition to determine whether any of them merit relief.

---

**2.** Even if a petition for postconviction relief invokes a statutory exception to the two-year limitations period, the petition " 'must be filed within two years of the date the claim arises' " under the applicable exception. *Sanchez v. State,* 816 N.W.2d 550, 556–58 (Minn.2012) (quoting Minn.Stat. § 590.01, subd. 4(c) (2012)). The State does not argue,

however, that Minn.Stat. § 590.01, subd. 4(c) independently bars Berkovitz's claims. Accordingly, we need not address the application of subdivision 4(c) to this case. *See Carlton v. State,* 816 N.W.2d 590, 606 (Minn.2012) (holding that Minn.Stat. § 590.01, subd. 4(c) is not jurisdictional).

### A.

The first exception invoked by Berkovitz's second petition for postconviction relief is the newly discovered evidence exception. For the newly discovered evidence exception to apply, a petitioner must:

(1) allege the existence of newly discovered evidence; (2) which could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition; (3) which is not cumulative to evidence presented at trial; (4) is not for impeachment purposes; and (5) which establishes by a clear and convincing standard that the petitioner is innocent of the offense for which the petitioner was convicted.

*Scott v. State*, 788 N.W.2d 497, 502 (Minn. 2010) (citing Minn.Stat. § 590.01, subd. 4(b)(2)).

Berkovitz's first claim for postconviction relief is that the district court judge who presided over her trial was biased against her. Berkovitz alleges that the judge had a conflict of interest because the judge's wife, who is a probate attorney, had a single conversation with Berkovitz more than 2 years before Berkovitz shot Joseph–Kordell and Hendrickson. During that conversation, the judge's spouse declined an invitation to represent Berkovitz in a probate matter. Even if there were some merit to Berkovitz's claim of judicial bias, the district court disclosed the potential conflict of interest on the record more than 4 months before Berkovitz's trial, neither party asked for the judge's recusal, and Berkovitz's petition fails to allege the existence of any *newly* discovered evidence in support of the claim.

Berkovitz's second claim for postconviction relief is that her trial counsel was ineffective. Specifically, Berkovitz alleges that her trial counsel: (1) refused to allow her to testify; (2) declined to call witnesses favorable to her; (3) neglected her request to seek the recusal of the judge; and (4) failed to give her access to discovery in the case. As with the claim of judicial bias, Berkovitz's petition does not identify any new evidence to justify our reconsideration of her ineffective-assistance-of-trial-counsel claim—a claim that we considered and rejected in her direct appeal.

Berkovitz's third claim for postconviction relief alleges that one of the public defenders who represented her at trial had a conflict of interest. To support her claim, Berkovitz alleges that, at some unspecified date following her conviction, she learned that one of the attorneys who represented her at trial had left the Office of the State Public Defender to join the Hennepin County Attorney's Office. Even if we assume that Berkovitz did not discover her former trial counsel's employment change until recently, the newly discovered evidence exception requires Berkovitz to "establish[ ] by a clear and convincing standard that [she] is innocent of the offense or offenses for which [she] was convicted." Minn.Stat. § 590.01, subd. 4(b)(2). Berkovitz's claim of attorney bias does not establish by any standard—let alone a clear and convincing one—that Berkovitz is innocent of either first-degree premeditated murder or attempted first-degree murder. *Cf. United States v. Winestock*, 340 F.3d 200, 208 (4th Cir.2003) (explaining that evidence that a habeas petitioner's appellate attorney had been disbarred did not constitute "clear and convincing" evidence of the petitioner's innocence).

Accordingly, we conclude that none of the three claims in Berkovitz's petition

satisfies the newly discovered evidence exception.

### B.

■ The second exception invoked by Berkovitz's petition is the interests of justice exception, which has two requirements: (1) that the petition is not frivolous and (2) that reviewing the petition is in the interests of justice. *Wallace v. State,* 820 N.W.2d 843, 849 (Minn.2012) (citing Minn. Stat. § 590.01, subd. 4(b)(5)). We therefore must decide whether Berkovitz's second petition for postconviction relief is frivolous and, if not, whether she is entitled to have her petition reviewed in the interests of justice.

■ We recently explained that a petition for postconviction relief is "frivolous" when "it is perfectly apparent, without argument, that the claims in the petition lack an objective, good-faith basis in law or fact." *Id.* at 850; *see also Gassler v. State,* 787 N.W.2d 575, 586 (Minn.2010). In determining whether a postconviction petition is frivolous, we assess the petition as a whole, "not just whether some of the individual claims in the petition are frivolous." *Wallace,* 820 N.W.2d at 850 n. 3; *see also* Minn.Stat. § 590.01, subd. 4(b)(5) (stating that the petitioner must establish that an untimely *petition* is not frivolous). Put differently, a petition for postconviction relief is frivolous only if *every* claim in the petition lacks an objective, good-faith basis in law or fact. *Wallace,* 820 N.W.2d at 850 n. 3. In this case, we conclude that each of Berkovitz's postconviction claims is frivolous.

■ Berkovitz's claim of judicial bias is frivolous because it is, without question, procedurally barred. A clearly procedurally barred claim "lacks an objective, good-faith basis in law" because it "rests upon 'an indisputably meritless legal theo-

ry.' " *Id.* at 850 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). Such a claim is "indisputably meritless" because we have, for more than three decades, declined to review claims that a postconviction petitioner raised, or could have raised, on direct appeal or in an earlier petition for postconviction relief. *See State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (holding that a claim is procedurally barred if it was raised, or could have been raised, on direct appeal); *see also Jones v. State,* 671 N.W.2d 743, 746 (Minn.2003) (extending the *Knaffla* rule to claims for relief that were raised, or could have been raised, in a prior petition for postconviction relief). Here, Berkovitz's claim of judicial bias is clearly procedurally barred: she knew of the facts underlying the claim when she filed her direct appeal and her first petition for postconviction relief. *See Berkowitz,* 2006 WL 2264726, at *1 (noting that Berkovitz raised a judicial bias claim in her federal habeas corpus petition, which she filed more than 2 years before her first postconviction petition).

For the same reason, Berkovitz's ineffective-assistance-of-trial-counsel claim is frivolous. Berkovitz has raised her ineffective-assistance-of-trial-counsel claim twice before: once on direct appeal and again in her first petition for postconviction relief. In her direct appeal, we concluded that Berkovitz's claim lacked merit. Because we expressly considered and rejected an identical claim on direct appeal, Berkovitz's claim of ineffective assistance of trial counsel is, without question, procedurally barred. *See Buckingham v. State,* 799 N.W.2d 229, 232 (Minn.2011) (concluding that two claims raised in a postconviction petition were procedurally barred because they were closely related to claims

the petitioner had raised on direct appeal).[3]

Berkovitz's conflict-of-interest claim against one of her trial attorneys is also frivolous. We have long held that "[a]llegations in a postconviction petition 'must be more than argumentative assertions without factual support.'" *See Schleicher v. State*, 718 N.W.2d 440, 444 (Minn.2006) (quoting *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995)). Berkovitz's allegation of bias is the type of unsupported, argumentative assertion that we have long prohibited. Berkovitz does not point to a single fact in the record—other than a routine employment change by one of her trial attorneys—to support her conflict-of-interest claim. Nor does Berkovitz explain how such an employment change—especially one that occurred *after* her trial ended—affected her counsel's representation of her in any way. In light of the lack of factual support and legal authority for Berkovitz's conflict-of-interest claim, we conclude that it is frivolous. *See Wallace*, 820 N.W.2d at 853 (concluding that an ineffective-assistance-of-counsel claim was frivolous because it lacked any factual support).

Accordingly, we conclude that none of the three claims in Berkovitz's petition satisfies the interests of justice exception.

### III.

For the foregoing reasons, we hold that the postconviction court did not abuse its discretion when it denied Berkovitz's second petition for postconviction relief.

Affirmed.

---

3. In 2005, the Legislature amended Minn. Stat. § 590.01, subd. 1 (2012). Under subdivision 1, "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." Act of June 2, 2005, ch. 136, art. 14, § 12, 2005 Minn. Laws 901, 1097. We need not, and do not, decide whether the exceptions to the *Knaffla* rule survive the 2005 amendment to the postconviction statute because, regardless of whether the exceptions apply, Berkovitz's claims of judicial bias and ineffective assistance of trial counsel are clearly procedurally barred.