**Kevin Terrance HANNON, Petitioner,**

**v.**

**STATE of Minnesota, Respondent.**

**No. A09–1380.**

Supreme Court of Minnesota.

May 13, 2010.

Kevin Terrance Hannon, Stillwater, MN, pro se.

Lori Swanson, Attorney General, St. Paul, MN, and Janelle P. Kendall, Stearns

County Attorney, Michael J. Lieberg, Assistant Stearns County Attorney, St. Cloud, MN, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

A Kanabec County jury found Kevin Terrance Hannon guilty of first-degree premeditated murder for the death of Deborah Tolhurst. The Kanabec County district court then convicted Hannon of that offense and sentenced him to life without the possibility of parole. On direct appeal, we reversed Hannon's conviction on the ground that the court erred when it admitted incriminating statements made by Hannon to the police after Hannon requested an attorney. *State v. Hannon* (*Hannon I*), 636 N.W.2d 796, 799, 807 (Minn.2001). When retried, Hannon was again found guilty and convicted of first-degree murder. *State v. Hannon* (*Hannon II*), 703 N.W.2d 498, 504 (Minn.2005). On direct appeal from this second conviction, we affirmed. *Id.* Hannon filed his first petition for postconviction relief in 2006. The postconviction court held a hearing but concluded that all the claims raised in Hannon's petition were either meritless or procedurally barred and denied the petition. Hannon appealed the denial of postconviction relief, and we affirmed. *Hannon v. State* (*Hannon III*), 752 N.W.2d 518, 520 (Minn.2008). The case before us is Hannon's appeal from the denial of his second petition for postconviction relief. We affirm.

The facts surrounding Deborah Tolhurst's murder are set forth in detail in both *Hannon I* and *Hannon II*. *See Hannon I*, 636 N.W.2d at 799–804; *Hannon II*, 703 N.W.2d at 502–04. At the time of Tolhurst's murder, petitioner, Kevin Terrance Hannon, and Tolhurst lived together in an apartment in Saint Cloud, Minnesota. *Hannon II*, 703 N.W.2d at 502. During midday on September 21, 1999, Hannon was drinking at a bar in Saint Cloud. *Id.* Hannon left the bar at approximately 1:15 p.m. and sometime later that afternoon he arrived at his apartment carrying two bottles of vodka. *See id.* While Hannon was at the apartment, he and Tolhurst began arguing and the argument escalated into a physical conflict. *Id.* at 503. Hannon began to hit and kick Tolhurst and bound her with duct tape. *Id.* He then threw a burning bag at her feet before leaving the apartment. *Id.* At around 9:00 p.m., a firefighter responding to a fire alarm found Tolhurst dead in a bedroom in the apartment, her feet and hands bound. *Id.* at 502–03. An autopsy revealed that the cause of Tolhurst's death was a beating, and that she was dead before the fire was set. *Id.* at 503.

The police investigation into Tolhurst's death focused on Hannon. Patrons of the Saint Cloud bar told the police they saw Hannon return to the bar sometime after 8:30 that evening. *Id.* The next morning, an off-duty Benton County deputy sheriff who had been at the bar the night of Tolhurst's death found a dirty, blood-stained denim shirt in his pickup truck. *Id.* The deputy sheriff turned the shirt over to the Saint Cloud police. Two servers at the bar later identified the shirt as the one Hannon had been wearing while at the bar on the day of Tolhurst's murder. *Id.*

At Hannon's first trial, the State introduced evidence from the Minnesota Bureau of Criminal Apprehension (BCA). A laboratory analysis of the shirt found in the deputy sheriff's pickup identified Tolhurst as the source of the blood on the shirt. *Hannon I*, 636 N.W.2d at 802. At Hannon's second trial, a BCA forensic scientist also testified that there were sloughed-off skin cells on the shirt's collar that comprised a DNA mixture of at least two individuals. *Hannon II*, 703 N.W.2d

at 504, 508. The scientist further testified that the predominant DNA profile of the mixture from the collar matched Hannon's profile and that the profile would not be expected to occur more than once in the world population among unrelated individuals. *Id.*

At Hannon's second trial, W.C. and M.S.—two individuals who were incarcerated at the Stearns County jail with Hannon after his arrest for Tolhurst's murder—testified that Hannon confessed to them that he had killed Tolhurst and described to them the events of the murder. *See id.* at 503. Hannon called only one witness in his defense, J.H. *Id.* at 504. J.H., who had also been incarcerated with Hannon, testified that he approached the police with information about Hannon in hope of currying favor and obtaining leniency. *See id.* Hannon called J.H. as a witness to demonstrate that jail informants are unreliable. *See id.* While testifying, J.H. disregarded the district court's instruction to refrain from making references to Hannon's previous trial. *Id.* As a result, the court halted J.H.'s testimony and read a summary of his testimony in place of his live testimony. *Id.*

After his second trial, Hannon was again found guilty of first-degree murder, convicted, and sentenced to life in prison without the possibility of parole. He appealed that conviction to our court. In the appeal, Hannon raised five issues, which were:

(1) Whether the district court violated Hannon's right to present a defense by ordering the cessation of [J.H.'s] testimony . . .; (2) Whether the district court's examination of [J.H.] and preparation of the summary of his testimony in the presence of defense counsel but not the defendant is reversible error; (3) Whether the district court violated Hannon's right of confrontation in admitting the testimony of a witness from Hannon's first trial who was unavailable at Hannon's second trial; (4) Whether the district court erred by allowing an expert to testify that the predominant DNA profile from a mixture of two or more individuals' DNA matched Hannon's DNA profile and giving a cautionary jury instruction different from the instruction proposed by the defense; and (5) Whether the district court erred by refusing to submit second-degree felony murder or manslaughter as lesser offenses.

*Id.* at 504–05. We affirmed Hannon's conviction, concluding that none of Hannon's alleged errors were in fact errors. *Id.* at 501–02.

In 2006, Hannon filed his first petition for postconviction relief alleging that: (1) his indictment was insufficient because it was based on recanted testimony and subsequently suppressed statements; (2) his trial counsel infringed upon his right to testify; (3) the district court was biased; (4) he received ineffective assistance of trial counsel; (5) the State committed prosecutorial misconduct; (6) the district court erred in excluding alternative perpetrator evidence; and (7) the district court erred in admitting the prior testimony of an unavailable witness. *See Hannon III,* 752 N.W.2d at 520. The postconviction court held a hearing to address Hannon's assertion that he was denied the right to testify at his second trial and concluded that each of Hannon's claims was either procedurally barred or was meritless. *Id.* Hannon appealed the court's denial of his petition to our court and additionally asserted that he was entitled to relief because trial counsel for his second trial did not consult him about a plea offer made by the State. *Id.* We affirmed Hannon's conviction, concluding that six of Hannon's claims were procedurally barred under *State v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737, (1976), and that Hannon's in-

effective-assistance-of-counsel claim was meritless. *Hannon III*, 752 N.W.2d at 521–23.

On January 22, 2009, Hannon again petitioned for postconviction relief. The postconviction court identified · eleven claims made by Hannon in three separate briefs and concluded that all of Hannon's claims were procedurally barred under *Knaffla* and were time-barred under Minn.Stat. § 590.01, subd. 4 (2008). Hannon appealed the denial of his second petition for postconviction relief to our court. On August 27, 2009, Hannon filed a motion with our court requesting permission to accept his enlarged· 70–page petitioner's brief. We denied the request, stating that Hannon could .either file a brief that conformed to the 45–page rule or could submit a letter identifying the sections of his 70–page brief that he wanted us to consider. Hannon did not abide by either option and instead reduced the font size of his original enlarged brief so that the brief would comprise fewer than 45 pages. Upon receipt of this nonconforming brief, we issued an order accepting only those sections of Hannon's brief that, if. submitted in a permissible font, would be within the 45–page limit.

In the parts of Hannon's brief that we consider, he essentially makes five claims for relief. Hannon asserts that he is entitled to postconviction relief because (1) he was convicted on the basis of fraudulent expert testimony, (2) he received ineffective assistance of counsel, (3) the district court did not have jurisdiction because the State failed to serve Hannon with a copy of the grand jury indictment, (4) the indictment should be "quashed" because it was based on false and coerced testimony, and (5) State witnesses testified falsely because they were coerced and bribed.

More specifically, Hannon's first claim is that the testimony ·of the BCA forensic scientist was false, and that his due pro-

cess rights were violated because he was convicted on the basis of that fraudulent evidence. He asserts that the BCA scientist fraudulently testified that she could not exclude Hannon as the · predominant contributor of DNA found on the shirt collar that also had the victim's blood on it. It appears that Hannon also asserts that the State violated *Brady v. Maryland*, 373 U.S.. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the State was aware that the· BCA scientist's testimony and the lab reports were falsified and that "laboratories commonly overstate the scientific value of" DNA evidence but did not disclose that material evidence to Hannon.

Regarding his second claim that he was denied effective assistance of trial counsel, Hannon asserts that his counsel stated to the district court that Hannon was competent to stand trial and did not request a Rule 20 evaluation even though counsel suspected that Hannon's intelligence level was below normal and counsel had been informed that Hannon had a brain injury. Hannon also asserts that counsel failed to inform him of a plea bargain offer, failed to introduce evidence that informants were coerced, failed to confront the State's DNA evidence, and generally did not provide adequate representation.

Concerning his third and fourth claims, Hannon alleges that the State never served him with a copy of the grand jury indictment and argues that because of this error, the district court did not have jurisdiction over his case. He also appears to argue that because we held that his confession was illegally obtained, and that confession was introduced before the grand jury, that the indictment should have been quashed.

Finally, in his fifth claim about the testimony of some State witnesses, Hannon challenges the testimony of prison informants on the ground that the testimony

was false. He also argues that the testimony was improper because his fellow inmates "interrogated" him outside the presence of his counsel. Hannon argues that because he "never knew that his rights had been violated" by this "interrogation," the admission of the informants' testimony is "newly discovery evidence."

The State argues that all of Hannon's claims are time-barred under Minn.Stat. § 590.01, subd. 4, and procedurally barred under *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. The State requests that we affirm the postconviction court's order denying Hannon relief on either or both grounds.

■ We review a postconviction court's decisions to determine whether the court's findings are supported by sufficient evidence. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007). We only reverse a postconviction court's decision if the court abused its discretion, but we review issues of law de novo. *Id.*

In 2005, the Minnesota Legislature amended the postconviction relief statute to limit the time a petitioner has to file a postconviction relief petition. Minnesota Statutes § 590.01 now provides that "[n]o petition for postconviction relief may be filed more than two years after ... an appellate court's disposition of petitioner's direct appeal." *See* Minn.Stat. § 590.01, subd. 4(a)(2). The amendment provides that the new time limitation took effect on August 1, 2005. *See* Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901, 1098 ("This section is effective August 1, 2005. Any person whose conviction became final before August 1, 2005, shall have two years after the effective date of this act to file a petition for postconviction relief.").

■ Hannon's second direct appeal became final 90 days after we issued our opinion on August 18, 2005. *See Moua v. State*, 778 N.W.2d 286, 288 (Minn.2010)

(holding that for purposes of the amendment's effective date provision, Moua's conviction became final 90 days after we affirmed his conviction). Because Hannon's conviction was final after the amendment went into effect, the two-year time limit in section 590.01 applies. Under section 590.01, subd. 4, Hannon's postconviction petition is time-barred if it was "filed more than two years after ... an appellate court's disposition of petitioner's direct appeal." It is undisputed that Hannon filed this postconviction petition more than two years after disposition of his direct appeal. Accordingly, Hannon's petition is time-barred under Minn.Stat. § 590.01, subd. 4(a)(2), unless an exception applies. *See also* Minn.Stat. § 590.01, subd. 4(b); *Stewart v. State*, 764 N.W.2d 32, 34 (Minn. 2009).

Minnesota Statutes § 590.01, subd. 4(b), provides several exceptions to the two-year limitation. The two-year deadline does not apply if a petitioner's disability prevents a timely petition, if newly discovered scientific evidence clearly and convincingly establishes innocence, if a change in the law applies to the petitioner's case, or if a court determines that "the petition is not frivolous and is in the interests of justice." *See* Minn.Stat. § 590.01, subd. 4(b).

Hannon fails to address the two-year limitation rule in Minn.Stat. § 590.01 or acknowledge that his petition was filed more than two years after the expiration of the deadline. Further, he offers no justification for his untimely petition, nor does he assert that any one of the statutory exceptions applies. Hannon does not contend that a disability prevented the timely filing of a petition, does not explain how any newly discovered scientific evidence clearly and convincingly establishes his innocence, does not argue that a change in the law applies to his case, or explain why his petition is not frivolous

and is in the interests of justice. Moreover, we fail to see how any of those exceptions apply to the claims raised by Hannon in his petition for relief.

 Hannon does argue that his fellow inmates interrogated him outside the presence of his attorney and that the interrogations are "newly discovery evidence" because he "never knew that his rights had been violated." But Hannon was aware at trial and during his direct appeal that fellow inmates testified to statements he made to them during his incarceration. These facts do not qualify as newly discovered evidence, nor are they newly discovered *scientific* evidence that clearly and convincingly establishes his innocence.

It is undisputed that Hannon filed his postconviction petition more than two years after an appellate court's disposition of his direct appeal; therefore, to qualify for relief he must demonstrate that one of the exceptions listed in the statute applies. As indicated above, he has failed to demonstrate that any of the statutory exemptions applies. We therefore hold that the postconviction court did not abuse its discretion when it concluded that Hannon's postconviction petition was time-barred under Minn.Stat. § 590.01, subd. 4.

Affirmed.