STATE OF MINNESOTA

IN SUPREME COURT

A16-0498

Stearns County                                                                    Hudson, J.

Kevin Terrance Hannon,

            Appellant,

vs.                                                                    Filed:  February 8, 2017
                                                                       Office of Appellate Courts
State of Minnesota,

            Respondent.

_____

Kevin Terrance Hannon, Saint Cloud, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, Saint Cloud, Minnesota, for respondent.
_____

S Y L L A B U S

    The postconviction court did not abuse its discretion when it denied appellant's

claims without holding an evidentiary hearing.

    Affirmed.

    Considered and decided by the court without oral argument.

1

O P I N I O N

HUDSON, Justice.

This case is an appeal from the denial of Kevin Terrance Hannon's third petition for postconviction relief. After we overturned Hannon's first conviction on direct appeal, he was tried a second time and convicted of first-degree murder while committing or attempting to commit a kidnapping, *see* Minn. Stat. § 609.185(a)(3) (2016), and sentenced to life in prison without the possibility of release under Minn. Stat. § 609.106, subd. 2(2) (2006). We affirmed Hannon's second conviction on direct appeal. Over the next few years, Hannon filed two petitions for postconviction relief, and we affirmed the denial of both petitions. In September 2015, Hannon filed his third petition for postconviction relief, raising a wide variety of claims. The postconviction court denied the claims as either meritless or as untimely filed under the 2-year statute of limitations in Minn. Stat. § 590.01, subd. 4 (2016). Because one of Hannon's claims is meritless and the remaining claims were untimely filed, the postconviction court did not abuse its discretion in summarily denying the petition. We therefore affirm.

I.

In September 1999, Hannon killed his girlfriend, Deborah Tolhurst, during a physical altercation in their shared apartment.[1] Among the pieces of evidence later discovered by law enforcement was a bloodstained denim shirt identified as the one that

---

[1] The facts underlying Hannon's crime are set forth in detail in *State v. Hannon* (*Hannon I*), 636 N.W.2d 796 (Minn. 2001), and *State v. Hannon* (*Hannon II*), 703 N.W.2d 498 (Minn. 2005).

2

Hannon had been wearing on the day of the murder. Bureau of Criminal Apprehension (BCA) Forensic Scientist Ann Gross obtained a DNA profile from the blood on the shirt that matched Tolhurst's DNA profile. Gross also obtained a DNA sample from skin cells on the shirt collar. According to Gross, the predominant DNA profile in the sample matched Hannon's DNA profile. She testified that neither profile match would be expected to occur more than once in the world's population among unrelated individuals.

After a jury trial, Hannon was convicted of four counts of first-degree murder and one count of second-degree murder. We reversed and remanded for a new trial after deciding that the trial court erroneously admitted statements made by Hannon to interrogating officers after he had invoked his right to counsel. *State v. Hannon* (*Hannon I*), 636 N.W.2d 796, 807 (Minn. 2001). After a second jury trial, Hannon was found guilty and convicted of first-degree murder while committing or attempting to commit a kidnapping and sentenced to life in prison without the possibility of release under Minn. Stat. § 609.106, subd. 2(2). We affirmed Hannon's conviction on direct appeal. *State v. Hannon* (*Hannon II*), 703 N.W.2d 498, 504 (Minn. 2005).

In December 2006, Hannon filed his first petition for postconviction relief. The postconviction court held a hearing, after which it concluded that all of Hannon's claims were either meritless or procedurally barred, and denied the petition. We affirmed the denial of Hannon's petition. *Hannon v. State* (*Hannon III*), 752 N.W.2d 518, 520 (Minn. 2008). In January 2009, Hannon filed another petition for postconviction relief. The postconviction court denied the petition, concluding that all of Hannon's claims were untimely filed under Minn. Stat. § 590.01, subd. 4, and procedurally barred. *See State v.*

3

*Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."). We affirmed the denial of Hannon's second petition, holding that the petition was untimely filed. *Hannon v. State* (*Hannon IV*), 781 N.W.2d 887, 892 (Minn. 2010).

This case involves Hannon's third petition for postconviction relief, which he filed in September 2015. In nearly 200 pages of materials, Hannon brought a host of claims, which generally fall into 12 categories: (1) an unauthorized sentence, (2) incompetence to stand trial; (3) ineffective assistance of trial counsel; (4) judicial bias by the trial judge; (5) judicial bias by the previous postconviction judge; (6) failure to serve the indictment; (7) actual innocence; (8) evidence of false DNA testimony from the BCA scientist; (9) evidence of false/inaccurate statements from the State's witnesses; (10) evidence relating to substantive evidence referenced at trial; (11) evidence of a violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (12) prosecutorial misconduct. The postconviction court denied Hannon's petition without holding an evidentiary hearing, concluding that all of the claims except the sentencing claim were untimely filed under section 590.01, subdivision 4, because they were brought more than 2 years after our disposition of his direct appeal and none of the statutory exceptions to the 2-year statute of limitations applied. Regarding the sentencing claim, the court held that the claim was meritless because the applicable statute, Minn. Stat. § 609.106, subd. 2(2), authorized the sentence that Hannon received. Hannon then filed this appeal.

## II.

We review the denial of a petition for postconviction relief under an abuse-of-discretion standard. *Erickson v. State*, 842 N.W.2d 314, 318 (Minn. 2014). "In doing so, we review findings of fact for clear error and questions of law de novo." *Id.* A postconviction court abuses its discretion only when it has "exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Rhodes v. State*, 875 N.W.2d 779, 786 (Minn. 2016) (quoting *Brown v. State*, 863 N.W.2d 781, 786 (Minn. 2015)). The petitioner bears the burden of "establishing, by a preponderance of the evidence, facts that would warrant relief." *Wilson v. State*, 726 N.W.2d 103, 106 (Minn. 2007). Although "doubts about whether to conduct an evidentiary hearing are resolved in favor of the petitioner," "a postconviction evidentiary hearing is not required when the petitioner alleges facts that, if true, are legally insufficient to grant the requested relief." *Rhodes*, 875 N.W.2d at 786. A postconviction court may summarily deny any claims that are untimely filed. *Id.* at 787.

## A.

Hannon's sentencing claim is based on his assertion that his sentence of life in prison without the possibility of release is impermissible because the maximum sentence permitted by Minn. Stat. § 609.185 (2016) is simply life in prison.[2] Minnesota Statutes § 609.185(a) mandates that an offender "be sentenced to imprisonment for life." As the

---

[2] Even assuming that this claim was properly brought as a motion under Minn. R. Crim. P. 27.03, subd. 9, the State argued, and the postconviction court held, that it was meritless, and we agree.

5

postconviction court noted, however, Hannon was not sentenced under section 609.185, which covers first-degree-murder crimes generally. Rather, he was sentenced under Minn. Stat. § 609.106, subd. 2(2), which mandates that one "convicted of committing first degree murder in the course of a kidnapping" (Hannon's offense) shall be sentenced to "life imprisonment without possibility of release." Because the applicable sentencing statute mandated a sentence of life imprisonment without the possibility of release for Hannon's offense, the postconviction court did not abuse its discretion when it concluded that Hannon's sentencing claim lacked merit.

B.

The postconviction court denied Hannon's remaining claims as untimely filed. The statute governing postconviction petitions, Minn. Stat. § 590.01 (2016), provides that "[n]o petition for postconviction relief may be filed more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a). Because Hannon filed a direct appeal challenging his conviction after the second trial, the 2-year statute of limitations period began in November 2005, 90 days after our disposition of Hannon's direct appeal in *Hannon II*. *See Berkovitz v. State*, 826 N.W.2d 203, 207 (Minn. 2013) (explaining that a conviction is final for purposes of section 590.01, subdivision 4(a)(2), when the time for filing a petition for certiorari with the U.S. Supreme Court has lapsed). Therefore, Hannon was required to bring his claims by November 2007, 2 years after his conviction became final. Because Hannon brought this petition in September

2015, almost 8 years after the deadline, his claims are untimely filed unless a statutory

exception applies.

Section 590.01 contains five exceptions to the statute of limitations in subdivision

4(a). One can petition for postconviction relief after the 2-year deadline has expired if:

> (1) the petitioner establishes that a physical disability or mental disease precluded a timely assertion of the claim;

> (2) the petitioner alleges the existence of newly discovered evidence, including scientific evidence, that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted;

> (3) the petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States Supreme Court or a Minnesota appellate court and the petitioner establishes that this interpretation is retroactively applicable to the petitioner's case;

> (4) the petition is brought pursuant to subdivision 3 [dealing with convictions for crimes committed before May 1, 1980]; or

> (5) the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice.

Minn. Stat. § 590.01, subd. 4(b). There is a separate statute of limitations for these

exceptions as well: a petitioner invoking any of these exceptions must still file a petition

"within two years of the date the claim arises." Minn. Stat. § 590.01, subd. 4(c). "A claim

arises under subdivision 4(c) when 'the petitioner knew or should have known that he had

a claim.' " *Rhodes*, 875 N.W.2d at 787 (quoting *Sanchez v. State*, 816 N.W.2d 550, 560

(Minn. 2012)). Therefore, it is not an abuse of discretion for a postconviction court to

summarily deny a petition that invokes an exception to the statute of limitations when the claim underlying the exception arises more than 2 years before the petition is filed. *Id.*

Hannon does not explain which exception applies; in fact, he does not mention section 590.01 and does not appear to acknowledge any statute-of-limitations problem, aside from one sentence in which he simply says, "None of [the claims] are time-barred." However, courts "are to liberally construe petitions" and look to their substance rather than form. Minn. Stat. § 590.03 (2016). The postconviction court therefore concluded that Hannon was attempting to use the second exception: newly discovered evidence.

Construing his petition liberally, Hannon arguably invokes the newly-discovered-evidence exception for his untimely filed claims. For example, in his arguments relating to false DNA testimony, Hannon contends that he has discovered new DNA evidence that we should consider. Accordingly, the postconviction court did not abuse its discretion in evaluating Hannon's claims under this exception.

Even if Hannon's claims properly fit the newly-discovered-evidence exception, all of his remaining claims arose more than 2 years before the filing of his third petition and are therefore untimely filed under section 590.01, subdivision 4(c). Because Hannon filed his third petition in September 2015, his claims would have had to arise in September 2013

or later to be within the subdivision 4(c) filing deadline. As discussed below, all of Hannon's claims arose before September 2013.[3]

First, Hannon argues that he was not competent to stand trial due to a mental deficiency resulting from a head injury he sustained as a child. In support of this claim, he directs us to transcripts from his 2007 postconviction hearing, during which his trial attorney discussed his mental state at trial; a 2009 neuropsychological evaluation; and a 2009 affidavit from a fellow inmate stating that Hannon appeared to have mental deficiencies. This claim is clearly untimely filed, as Hannon acknowledges that his mental deficiencies were known at trial, and the materials he attaches are all dated 2009 or earlier. Thus, this claim arose well before September 2013.

Second, Hannon argues that he received ineffective assistance of counsel from his attorney at his second trial. In particular, Hannon takes issue with trial counsel's alleged failure to request a competency hearing; asserts that trial counsel did not allow Hannon to testify at his trial despite Hannon's desire to do so; and claims that he overheard the prosecutor offering trial counsel a plea bargain in his case, which trial counsel allegedly declined without consulting Hannon. In support of these claims, Hannon states that trial counsel admitted to him, over a "recorded prison phone," that trial counsel received and

---

[3]    In addition to the 12 identified categories of claims, Hannon's Motion for Evidentiary Hearing references several constitutional rights that have allegedly been violated, including his right not to incriminate himself, his right to be confronted by his accusers, his right not to be placed twice in jeopardy, and his right to due process of law. Because these arguments are based on conclusory assertions that lack any factual support, we need not discuss them independently of his other claims. *See Davis v. State*, 784 N.W.2d 387, 391 (Minn. 2010) (rejecting petitioner's claim because it was based on "conclusory, argumentative assertions without factual support").

9

declined a plea deal, and points to the transcript from his 2007 postconviction hearing, in which trial counsel testified about the decision not to request a competency hearing and the decision not to have Hannon testify. Again, Hannon was aware of the claims regarding the competency hearing and the decision not to testify when he petitioned for postconviction relief in 2006 and during his hearing in 2007, and was aware of trial counsel's admission over the telephone at least by 2009 (when he included it in his second postconviction petition), all of which occurred before September 2013, making his claims untimely filed.

Third, Hannon argues that the trial judge was biased against him because she was in a personal relationship with an acquaintance of the victim. Hannon points to the trial judge's alleged refusal to grant a request for a psychological evaluation at trial, a 2006 affidavit from trial counsel stating that the judge had a personal relationship with the acquaintance, and a 2002 letter from an investigator whose interview of the acquaintance's ex-husband appears to support the claim that the trial judge had a social relationship with the acquaintance. As with the other claims, the alleged judicial bias was known at the time of Hannon's trial (in fact, Hannon attempted unsuccessfully to have the trial judge removed from the case), and the latest date on the supporting materials is 2006, making this claim untimely filed by at least 7 years.

Fourth, Hannon alleges judicial bias by the postconviction judge. Hannon contends that the postconviction judge acted improperly by: (1) telling trial counsel to change his testimony when trial counsel testified at Hannon's first postconviction hearing; and (2) discussing trial counsel's anticipated testimony with the prosecutor at the hearing and commenting that he (the postconviction judge) already knew how he would rule in the case.

10

In support of his position, Hannon again cites the transcript from his 2007 hearing, when the change in testimony took place; the last page of the postconviction judge's memorandum from the 2007 hearing questioning trial counsel's testimony (which allegedly shows the postconviction judge's bias); and a 2015 affidavit by trial counsel stating that Hannon's postconviction attorney overheard the conversation between the postconviction judge and the prosecutor and told trial counsel. The claims regarding the postconviction judge's bias based on the 2007 materials are clearly untimely filed as Hannon knew of the claims in 2007, several years before September 2013. Although the 2015 affidavit is dated within the appropriate range, the alleged conversation took place in April 2007, and was overheard by Hannon's postconviction attorney and immediately relayed to Hannon's trial attorney. To qualify under the newly-discovered-evidence exception, the evidence must not have been able to be "ascertained by the exercise of due diligence by the petitioner *or petitioner's attorney* within the two-year time period for filing a postconviction petition." Minn. Stat. § 590.01, subd. 4(b)(2) (emphasis added). Because Hannon's attorney knew of the alleged conversation before the expiration of the 2-year time period for filing a petition in November 2007, the affidavit and conversation do not fit within the newly-discovered-evidence exception and therefore cannot form the basis of a claim.

Fifth, Hannon contends that the indictment was defective because, according to him, he was not served with the indictment until he specifically requested it in 2008. This claim is also untimely filed. Hannon should have been aware of the failure to serve the indictment when he faced trial for the crime; and even by his own admission, he knew

11

about this failure in 2008 when he requested and received the indictment. The claim thus accrued well before 2013.

Sixth, Hannon argues that prosecutorial misconduct occurred because the prosecutor used jailhouse informants and failed to disclose to Hannon the deals offered to the witnesses.[4] Hannon's evidence is a 2009 affidavit from an inmate stating that other inmates had been offered incentives to testify against Hannon, as well as the transcript from a 1999 proceeding, which allegedly demonstrates that a witness agreed to testify against Hannon in exchange for dismissal of his charge. As with his other claims, these pieces of evidence are dated well before 2013 and therefore Hannon's newly-discovered-evidence claim of prosecutorial misconduct was untimely filed.

Hannon's remaining claims deal with two major allegations: first, that newly discovered evidence shows that some of the State's witnesses provided false statements; and second, that newly discovered DNA evidence supports his innocence and shows that the State's expert witness's DNA-evidence testimony was false. As to the first claim, Hannon's support consists of a 2006 affidavit by trial counsel claiming that: (1) one witness admitted in a sworn statement that he had been coerced into testifying falsely before the grand jury; and (2) another witness informed trial counsel that the witness had lied to investigators. Hannon's other piece of evidence is the 2001 sworn statement of the first witness mentioned in trial counsel's affidavit, stating that the witness had been coerced

---

[4] Although it is listed as a separate claim, Hannon's claim of a *Brady* violation appears to be based on the State's alleged failure to disclose to Hannon the deals it offered to its witnesses, and therefore this claim fits in the prosecutorial-misconduct category.

into providing false answers to interrogators and that he had been prevented from testifying truthfully at the grand-jury hearing. This claim is clearly untimely filed; Hannon knew or should have known about the first witness's untruthfulness by, at the latest, 2001 (the date of the affidavit), and even trial counsel's affidavit, dated 2006, was prepared several years before September 2013.

Regarding the DNA-evidence claim, Hannon asserts that the BCA scientist's DNA testimony tying Hannon to the crime was false. He claims that this falsity is demonstrated by a 2008 letter addressed to him from an Assistant Public Defender, in which the public defender disagrees with the BCA scientist's conclusions from the DNA analysis of the bloodstained shirt. Hannon also cites a 2011 affidavit by trial counsel stating that trial counsel was unaware of the public defender's conclusions and that they would have been used in Hannon's defense had they been known. This claim is also untimely filed because Hannon was informed of the public defender's opinion in 2008, as Hannon himself concedes, which is well before 2013.

Finally, Hannon asserts that he is actually innocent. This claim is wholly premised on his other claims. For example, he claims that the evidence he presented regarding the DNA evidence at his trial shows that the DNA-evidence testimony was false and therefore he is innocent. Having carefully considered Hannon's actual-innocence claim, we conclude that it lacks merit and, in any event, is untimely filed because all of the underlying claims are untimely filed.[5]

---

[5]    The State argued to the postconviction court in the alternative that Hannon's claims are *Knaffla*-barred. The postconviction court noted that many of Hannon's untimely filed

III.

For the foregoing reasons, we conclude that the postconviction court did not abuse its discretion when it denied Hannon's postconviction petition without holding an evidentiary hearing.

Affirmed.

claims were raised in his prior postconviction petitions, but disposed of those claims solely based on the postconviction statute of limitations. Because Hannon's claims are clearly untimely filed, there is no need to evaluate whether the claims are also *Knaffla*-barred.