LILLEHAUG, Justice.
In 2009, a Winona County jury found appellant Jack Willis Nissalke guilty of *190 first-degree premeditated murder, in violation of Minn. Stat. § 609.185(1) (1984), for the 1985 murder of Ada Senenfelder. On direct appeal, we affirmed Nissalke's conviction. State v. Nissalke (Nissalke I ), 801 N.W.2d 82 (Minn. 2011). Later, we affirmed the postconviction court's summary denial of Nissalke's first postconviction petition. Nissalke v. State (Nissalke II ), 861 N.W.2d 88 (Minn. 2015). In 2017, Nissalke again petitioned for postconviction relief, and the postconviction court summarily denied the petition without an evidentiary hearing. Because the record conclusively shows that Nissalke is not entitled to relief, we affirm.
FACTS
On June 6, 1985, Ada Senenfelder was found murdered in her home in Winona, Minnesota. Cut and stabbed 33 times, she bled to death from a wound to the heart. Senenfelder's death went unsolved for more than 20 years. Witnesses provided information connecting Nissalke to the murder. In 2008, a grand jury indicted Nissalke on one count of first-degree premeditated murder in violation of Minn. Stat. § 609.185(1) (1984), one count of first-degree murder while committing witness tampering in violation of Minn. Stat. § 609.185(3), and two counts of aiding and abetting first-degree murder in violation of Minn. Stat. §§ 609.05, 609.185(1), (3) (1984) (premeditation and committing witness tampering).
At trial, the State's theory of the case was that Nissalke murdered Senenfelder because she told police that James Bolstad, a friend of Nissalke's, had sexually assaulted a minor child. After James Bolstad was arrested for a probation violation that stemmed from Senenfelder's allegations, Nissalke was part of a collective effort by a group of Bolstad's family and friends to intimidate Senenfelder into recanting that allegation. Nissalke and others in the group broke into Senenfelder's house after she refused to open her front door. Nissalke later stole her bicycle and radio. On another occasion, Ed Bolstad threatened Senenfelder with a knife while Nissalke yelled at her to drop the charges. A few days later, Nissalke and Linda Erickson went to Senenfelder's house to persuade her to drop the charges against James Bolstad.
Senenfelder recanted her statement to James Bolstad's probation officer. James Bolstad's sister, J.B., testified that Erickson threw a party to celebrate. Nissalke attended. During the party, Erickson received a telephone call informing her that the plan to get James Bolstad out of jail was unsuccessful. J.B. heard Erickson offer to pay Nissalke to kill Senenfelder, and Nissalke asked Erickson how much she would pay him to do it. J.B. heard Nissalke say in a "harsh tone" that: "The bitch could be killed easy" and "the bitch has to go ... she has to die." Nissalke and Erickson then left the party saying, "kill the bitch."[1]
R.B., who lived in the same apartment building as Senenfelder, also testified for the State. On the night of Senenfelder's murder, Nissalke went to R.B.'s apartment and asked to borrow her flashlight. Nissalke told R.B. that he needed a flashlight because he had lost a knife and wanted to look for it underneath a car. R.B. saw a blood-stained rag wrapped around Nissalke's hand. She asked Nissalke what had happened to his hand, and Nissalke told her that he had cut it while cutting the *191 head off a turtle. R.B. said the cut appeared to be fresh.
The next morning, R.B. heard about the murder and went to Senenfelder's apartment. R.B. saw Nissalke and Erickson nearby. Nissalke was walking "zigzaggy" and looking at the ground as if searching for something. R.B. heard Erickson ask Nissalke if he had found the knife, and Nissalke replied that he had not.
Witness P.C. testified that, on the morning that Senenfelder was found murdered, Nissalke and Erickson offered her $400 to help them clean Erickson's apartment. Erickson told P.C. to throw away the clothes that Erickson had put in big plastic bags, and to clean Erickson's apartment with ammonia and bleach. P.C. testified that they "went through eight gallons and it was still not enough." Nissalke asked P.C. to look for a buck knife, which she understood to mean the knife that Nissalke "always wore" on his side. As she searched, Nissalke anxiously asked her multiple times whether she had found the knife.
J.B. and R.B. each testified that, on the afternoon following the discovery of Senenfelder's body, Erickson and Nissalke told their group of friends, including those who had been at the party, as well as R.B., that Senenfelder had been murdered and everyone needed to get their "story straight." Nissalke instructed them to say that no one had left the party. Both R.B. and J.B. testified that Nissalke admitted to killing Senenfelder during the get-your-story-straight meeting. The State presented other witness testimony that Nissalke had admitted to murdering Senenfelder, including Nissalke's statement that he "f-king offed Ada Senenfelder" as he made a stabbing motion.
Forensic evidence tied Nissalke to the murder. Police recovered from the crime scene a large butcher knife that was covered in blood and found lying across Senenfelder's wrist. A medical examiner testified that the large butcher knife "did not cause all the injuries to the subject's body," and that some were caused by at least two smaller knives, possibly three. The medical examiner also testified that it was possible that a small buck knife, like the one habitually carried by Nissalke, had inflicted some of the wounds. The State also offered evidence that Nissalke's DNA was found in Senenfelder's apartment on two cigarette butts. In addition, Nissalke's DNA could not be excluded from the DNA on the blue bedspread where Senenfelder's body was found.
A jury found Nissalke guilty on all four counts. The district court convicted Nissalke of first-degree premeditated murder and sentenced him to life imprisonment without the possibility of release. We affirmed Nissalke's conviction on direct appeal. Nissalke I , 801 N.W.2d at 112.
Nissalke timely petitioned for postconviction relief in 2013, raising several claims. With the exception of a sentencing claim for incarceration credit, the postconviction court denied relief on all claims. We affirmed. Nissalke II , 861 N.W.2d at 95.
Nissalke petitioned for postconviction relief in 2017, arguing that he is entitled to relief under the newly-discovered-evidence or interests-of-justice exceptions to the two-year statute of limitations governing postconviction petitions. This appeal follows the postconviction court's summary denial of Nissalke's petition.
ANALYSIS
We review a summary denial of postconviction relief for an abuse of discretion, and will not reverse the postconviction court unless it erred in its application of the law or made factual findings that were clearly erroneous. Andersen v. State , 913 N.W.2d 417, 422 (Minn. 2018). "If, *192 taking the facts alleged in a light most favorable to the petitioner, the 'petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief,' the postconviction court may dismiss the petition without an evidentiary hearing." Fox v. State , 913 N.W.2d 429, 433 (Minn. 2018) (quoting Minn. Stat. § 590.04, subd. 1 (2016) ).
A petitioner is not entitled to relief if the petition is untimely. Minn. Stat. § 590.01, subd. 4 (2016). A petition is untimely if it is filed more than two years after "the entry of judgment of conviction or sentence if no direct appeal is filed ... or an appellate court's disposition of petitioner's direct appeal," whichever is later. Id.
Notwithstanding the two-year statute of limitations, a petition for postconviction relief is timely if an exception to the two-year bar applies. Minn. Stat. § 590.01, subd. 4(b). The statute governing postconviction petitions contains five exceptions. Id. Each exception is governed by a separate two-year statute of limitations requiring that a petitioner invoking an exception do so within two years of the date that a claim arises under that exception. Id. , subd. 4(c) ; Hannon v. State , 889 N.W.2d 789, 793 (Minn. 2017). A claim arises under an exception "when the petitioner knew or should have known that he had a claim." Rhodes v. State , 875 N.W.2d 779, 787 (Minn. 2016) (internal citation and quotation omitted). Nissalke's present petition was filed in October 2017, more than 5 years after we decided his direct appeal, and thus is time-barred unless an exception applies.
Nissalke's claims fall into four categories: those asserted under the newly-discovered-evidence exception, Minn. Stat. § 590.01, subd. 4(b)(2) ; those asserted under the interests-of-justice exception, id. subd. 4(b)(5) ; those that were asserted without invoking an exception; and those that lack any support. We address each category in turn.
I.
Nissalke first argues that he is entitled to relief under the newly-discovered-evidence exception. This exception requires the petitioner show that the evidence: (1) is "newly discovered," (2) "could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition," (3) "is not cumulative to evidence presented at trial," (4) "is not for impeachment purposes," and (5) "establishes by a clear and convincing standard that the petitioner is innocent of the offense ... for which the petitioner was convicted." Minn. Stat. § 590.01, subd. 4(b)(2).
Nissalke contends that newly discovered evidence demonstrates that several of the State's witnesses provided false testimony at his trial. The first witness is P.C., who testified that Nissalke and Erickson paid P.C. to clean Erickson's apartment. Nissalke relies on a Clorox bleach warning label and a report discussing the dangers of mixing bleach and ammonia to rebut P.C.'s testimony regarding the products she used to clean the apartment.
Nissalke also argues that R.B. provided false testimony about a cut on his hand, and that he walked "zigzaggy" on the morning that Senenfelder's body was discovered. According to Nissalke, the police planted this false testimony in R.B.'s brain to "conform to the investigator's theory of what happened." Nissalke relies on several exhibits to support this contention: two interviews of R.B. by police in June 1985, an investigating officer's report about his interview of Nissalke at the scene of the murder, a report that the street in front of *193 Senenfelder's house was blocked off on the morning that her body was discovered, and a map of Senenfelder's house and the surrounding area.
M.D. testified at trial that Nissalke and R.B. visited him while he was in jail. Nissalke contends that he never visited M.D. in jail and argues that four exhibits support this contention: a report written by the trial investigator for the defense, two 1985 interviews of M.D., and a two-page summary of statements made by M.D. during a hearing in a different matter.
These claims about alleged false witness testimony do not fit within the newly-discovered-evidence exception because the evidence is not new. Nissalke submitted the same exhibits in his 2013 postconviction petition. The two-year statute of limitations has run on these claims.[2]
Nissalke next alleges newly discovered evidence of two violations of the Brady rule that requires the prosecution to disclose all exculpatory evidence that is material to either guilt or punishment. Brady v. Maryland , 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Nissalke argues that the prosecution withheld exculpatory evidence concerning the content of Linda Erickson's 2009 plea-hearing testimony. Specifically, he asserts that her plea-hearing testimony was contrary to the testimony given by the State's witnesses at Nissalke's trial, and is newly discovered evidence because he did not obtain the 2009 plea-hearing transcript until 2017.
At the threshold, evidence of what transpired at Erickson's guilty plea hearing could not be a Brady violation for purposes of Nissalke's trial, because her guilty plea occurred after Nissalke's trial. In any event, Nissalke obtained the evidence more than two years before he filed the current petition. By his own pleading-in his first postconviction petition in 2013-Nissalke alleged that Erickson's testimony at her plea hearing varied from testimony of the State's witnesses at Nissalke's trial. Thus, the claim is time-barred.
Nissalke also contends that the prosecution withheld exculpatory evidence about a man named "Dave" who is referenced during a 2006 police interview of R.B. He cites one page from the transcript of this interview, and contends that it is exculpatory because it shows that a person named Dave may have made an under-the-table deal with R.B. on behalf of the prosecution. Because Nissalke submitted this exhibit with his 2013 postconviction petition, it is not newly discovered evidence, and the two-year statute of limitations has run on this claim.
Nissalke argues that he acquired newly discovered evidence showing that the prosecution withheld information from the district court regarding his surrender of his buck knife to police in 1985. To support this claim, he relies on an evidence log showing police custody of his buck knife. Again, this claim is time-barred. The evidence log was disclosed to Nissalke during pre-trial discovery, and Nissalke raised this issue in his 2013 postconviction petition.
Nissalke next contends that he acquired newly discovered evidence that his blood type differs from the blood type found at the crime scene. This contention is not newly discovered evidence; he made this same argument in his 2013 postconviction petition.
*194 II.
Nissalke next urges the interests-of-justice exception. See Minn. Stat. § 590.01, subd. 4(b)(5). A petitioner asserting the interests-of-justice exception to the statute of limitations is required to identify "an injustice that delayed the filing of the petition." Hooper v. State , 888 N.W.2d 138, 142 (Minn. 2016). A claim invoking this exception must be filed within two years after the claim arises. Minn. Stat. § 590.01, subd. 4(c).
Nissalke bases his interests-of-justice claim on his limited access to discovery at the time of his direct appeal from conviction. But he acknowledges that he received access to the discovery in its entirety in 2013, which is at least 3 years before the current petition was filed. The interests-of-justice exception does not apply.
III.
Nissalke next asserts claims of prosecutorial misconduct and ineffective assistance of trial and appellate counsel. Although Nissalke does not specifically argue that an exception to the two-year statute of limitations applies, each claim is time-barred even if we construe his petition liberally. See generally Rickert v. State , 795 N.W.2d 236, 241 (Minn. 2011) (liberally construing the petition to determine whether the petitioner has invoked an exception).
Nissalke claims that the prosecutor engaged in prejudicial misconduct by asking questions during direct examination that the prosecutor knew would lead the State's witnesses to testify falsely. This claim arose no later than 2013, when Nissalke petitioned for postconviction relief and submitted exhibits demonstrating the same allegedly false testimony. It is time-barred.
Nissalke also contends that his trial and appellate counsel were unconstitutionally ineffective. But both claims are time-barred because Nissalke asserted each in his 2013 postconviction petition. Nissalke II , 861 N.W.2d at 93-95.
IV.
Finally, we turn to two claims that lack any support. Nissalke argues that the postconviction court made improper credibility determinations when it summarily denied his petition. Postconviction courts may not find a postconviction affiant unreliable without first holding an evidentiary hearing to assess the affiant's credibility. Andersen , 913 N.W.2d at 423. But Nissalke did not submit to the postconviction court any new affidavits or evidence, so nothing was improperly judged. Nissalke also appears to assert that he is entitled to relief for constitutional reasons. We do not consider this claim because it is unsupported by either argument or citations to legal authority. State v. Bartylla , 755 N.W.2d 8, 22 (Minn. 2008).
CONCLUSION
For the foregoing reasons, we affirm the postconviction court's summary denial of postconviction relief.
Affirmed.

Erickson was charged with, and pleaded guilty to, manslaughter in the death of Senenfelder.

Nissalke also contends that three other witnesses, K.B., S.S., and J.B., each provided false testimony. We do not address these arguments because each is based on a conclusory assertion lacking factual support. Hannon , 889 N.W.2d at 793 n.3.